IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

FANYA ENGLER,

    PLAINTIFF

    vs

THE METROPOLITAN TRANSIT
AUTHORITY, a public entity,
METROPOLITAN TRANSIT AUTHORITY
POLICE OFFICERS"JOHN and
MARY DOES", in their individual
capacities and in their official
capacities, METROPOLITAN TRANSIT
AUTHORITY POLICE OFFICER "JOE"
ALVAREZ,in his individual and
official capacities,

    DEFENDANTS
_____

12 Civ 7378
COMPLAINT
[JURY TRIAL]

## I.  INTRODUCTION

1. This is a litigation which arises out of the Plaintiff's stop and detention and custodial arrest on Friday, August 17, 2012 at or about 7:00 P.M. at the Grand Central Station Terminal facility and the force and all associated therewith and the Plaintiff's detention in a cell at that facility until she was transferred to Manhattan Central Booking at or about 1:30 A.M. on August 18, 2012 where she was detained and maintained in custody until the Plaintiff was released from the Manhattan Central Booking Facility at or about 2:00 P.M. on August 18, 2012, without any court appearance and without requirement of an appearance at court, when and because the New York County District Attorney's Office declined to prosecute and to bring any formal charge against the Plaintiff.

    2.  This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

3. The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of her rights.

## II. JURISDICTION

4. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

5. The Plaintiff requests that the Court invoke pendent claim and pendent party jurisdiction. The State law claims derive from the same occurrence and transaction which gives rise to the federal law claims and they have a common nucleus of operative fact with the federally based claims.

6. The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

7. This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

8. Venue of this Court is properly invoked as the actions and conduct complained of herein took place within the geographic boundaries of the jurisdiction of this Court and the Defendants have offices for doing business within the geographic boundaries of the jurisdiction of this Court.

9. To the extent that there are prerequisites for the filing and pursuit of the pendent State law claims, the Plaintiff has met those conditions.

### III. THE PARTIES

10. The Plaintiff is an American citizen and resident of the City of New York, the County of New York, and the State of New York.

11. The Defendant Metropolitan Transit Authority is a public entity which was created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, has, among other powers, the power to maintain a police department for the purpose of enforcing the laws of the State of New York and providing for the safety of the patrons of the services which it provides for the public.

12. Defendants "Joe" Alvarez and "John and Mary Does" are Metropolitan Transit Authority Police Officers and agents and employees of the Metropolitan Transit Authority. Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and as guaranteed under the laws and Constitution of the State of New York, they were taken in and during the course of their duties and functions as Metropolitan Transit Authority Police Officers and as agents and employees of the Metropolitan Transit Authority and incidental to the otherwise lawful performance of their duties and functions as Metropolitan Transit Authority Police Officers and agents and employees of Metropolitan Transit Authority.

### IV. ALLEGATIONS

13. This is a litigation which arises out of the Plaintiff's stop and detention and custodial arrest on Friday, August 17, 2012 at or about 7:00 P.M. at the Grand Central Station Terminal facility and the force and all associated therewith and the Plaintiff's detention in a cell at that facility until she was transferred to Manhattan Central Booking at or about 1:30 A.M. on August 18, 2012 where she was detained and maintained in custody until the Plaintiff was released from said Manhattan Central Booking Facility at or about 2:00 P.M. on August

18, 2012, without any appearance and without requirement of an appearance at court, when and because the New York County District Attorney's Office declined to prosecute and to bring any formal charge against the Plaintiff.

    14.  The Plaintiff, who is an American citizen and resident of the City of New York, County of New York, State of New York, is thirty five [35] years of age.

    15.  The Plaintiff's birth date is December 16, 1976.

    16.  The Plaintiff is single.

    17.  The Plaintiff has no children.

    18.  The Plaintiff resides at 414 East 10th Street, Apt. # 4E, New York City, New York 10009.

    19.  The Plaintiff lives alone.

    20.  Except for a brief period of time when she resided in Brooklyn, New York from November, 2009 to June, 2010, the Plaintiff has resided at her present address since June, 2007.

    21.  Prior to residing at her present location, the Plaintiff resided at another address on East 10th Street for approximately two years.

    22.  The Plaintiff was born in Albany, New York where her father was employed by the New York State Department of Higher Education.

    23.  The Plaintiff's mother is a registered nurse.

    24.  The Plaintiff and her family relocated to a suburb of Richmond, Virginia just before she turned four.

    25.  While attending school in Virginia, the Plaintiff got her first job, as a dance assistant, at the age of thirteen.

    26.  The Plaintiff has been regularly and gainfully employed throughout her life commencing back with her first job at the age of thirteen.

27. The Plaintiff graduated from Clover Hill High School, with honors and multiple awards for her artwork, in 1994.

28. The Plaintiff was a National Merit Scholarship semi-finalist.

29. The Plaintiff attended and graduated from Skidmore College in 1998 with a Bachelor of Science in Studio Art and a minor in Dance.

30. The Plaintiff started working full time for a multimedia production company in Saratoga Springs, New York where Skidmore College is located.

31. In April, 2002, the Plaintiff moved to New York City where she has lived, for most of that time in the East Village, Manhattan, first as a rental tenant and at present as a homeowner.

32. The Plaintiff is presently employed at Control Group, full time, and has been so employed thereat for approximately two and one half years.

33. The Plaintiff has been employed full time in tech related positions since September, 2004 when she went to work at Apple. Prior thereto and even thereafter, the Plaintiff worked in a freelance multimedia production capacity including as a daily hire at ABC News during its high demand seasons and including for independent standing clients of her own.

34. The Plaintiff has been involved in various artists' collectives over the past ten years and has shown her own artwork at the A.I.R. Gallery.

35. This is a litigation which arises out of the Plaintiff's stop and detention and custodial arrest on Friday, August 17, 2012 at or about 7:00 P.M. at the Grand Central Station Terminal facility and the force and all associated therewith and the Plaintiff's detention in a cell at that facility until she was transferred to Manhattan Central Booking at or about 1:30 A.M. on August 18, 2012 where she was detained and maintained in custody until the Plaintiff was released from said Manhattan Central Booking Facility at or about 2:00 P.M. on August 18, 2012, without any appearance and without requirement of

an appearance at court, when and because the New York County District Attorney's Office declined to prosecute and to bring any formal charge against the Plaintiff.

36. At or about 7:00 P.M., the Plaintiff entered Grand Central Station Terminal facility as part of an Occupy Wall Street activity which was called to bring attention to the United States Supreme Court's decision known as Citizens United which decision opened political campaigns to the infusion of vast sums of money.

37. Prior to entering into the Grand Central Station Terminal facility, the Plaintiff met up with an individual, Albert Malchikov.

38. Together, they went to the Grand Central Station Terminal facility and entered into the facility at 43rd Street.

39. They entered into the Grand Central Station Terminal facility at or about 7:00 P.M.

40. Albert Malchikov was carrying a small sign with multiple helium filled balloons attached to it and the Plaintiff was assisting him in order to make sure that the sign and balloons did not tangle too much.

41. The sign simply stated "Occupy".

42. The Plaintiff and Albert were, as they entered into the Grand Central Station Terminal facility, not interfering with pedestrian traffic that was traversing in the area or otherwise engaged in any kind of unlawful conduct.

43. The Plaintiff and Albert were acting in a reasonable and orderly manner and fashion as they proceeded into the Grand Central Station Terminal facility.

44. As they proceeded, the Plaintiff and Albert passed at least two, if not more, uniformed police officers one of whom made eye contact with the Plaintiff.

45. The Plaintiff and Albert were not directed in any form or fashion to stop or to otherwise not proceed further with the small sign and attached multiple balloons.

46. The Plaintiff and Albert reached the main concourse area of the Grand Central Station Terminal facility in or about the vicinity of the clock situated and located in the main concourse area.

47. No law enforcement officer stopped the Plaintiff and Albert or otherwise directed them to cease carrying the small sign and the multiple balloons attached thereto.

48. The Plaintiff and Albert were not interfering with pedestrian traffic traversing in the area or law enforcement officer then present in the area.

49. The Plaintiff and Albert were not disorderly and were otherwise proceeding in a reasonable manner and fashion.

50. The small sign and multiple balloons attached thereto did not pose a hazard to anyone including the law enforcement officers then present and including the pedestrians then traversing in the area or others then present in the area.

51. There was noise in the area and a lot of people traversing in the area.

52. The Plaintiff did not identify any specific person or multiple persons whom she believed to be part and parcel of any Occupy Wall Street activity although she believed that, among the many people in the area, there were such persons then present.

53. The Plaintiff and Albert were stopped and endeavoring to detangle the balloons attached to the sign when, without any directives from law enforcement officers to them and without receiving any forewarning from law enforcement officers and only a matter of at most a couple of minutes after arriving at the main concourse area [if that], a police officer ripped the sign away from Albert and the Plaintiff causing the multiple balloons to be released upwards toward the ceiling of the main concourse area in the Grand Central Station Terminal facility.

54. Immediately, a "white shirt" female police officer walked directly up to the Plaintiff and Albert and stated something to the effect that "I want those two" or,

perhaps, "arrest those two" [something of that sort and substance].

55.  The Plaintiff and Albert did not move.

56.  Other police officers in the area moved toward the Plaintiff and Albert and both Plaintiff and Albert were immediately handcuffed, again without any directives to them from police officers or any other warnings or other information being conveyed by police officers to the Plaintiff and to Albert.

57.  The Plaintiff and Albert were not informed why they were being arrested and the Plaintiff and Albert had no idea why they were being arrested as they had never been informed of anything prior to the action as described above nor directed to do anything or not to do anything [as described above].

58.  Prior to the actions taken again them as described, the Plaintiff and Albert had been acting in a reasonable manner and fashion; they had not been disorderly; they had not created a hazard; they had not interfered with either police officers or any other person then in the area; and they had not been directed to do something or to cease doing anything.

59.  A National Lawyers Guild associated observer asked for the Plaintiff's name as the Plaintiff and Albert were arrested and detained.

60.  Because of the noise, the Plaintiff informed the individual to get her pedigree information from a specific individual whose name she mentioned [one Billy Livsey].

61.  When the Plaintiff was handcuffed, the handcuffs were placed on her wrists in a very harsh and tight manner and fashion causing the Plaintiff more than discomfort but actual pain and suffering.

62.  The Plaintiff and Albert were taken, in custody, to a lower level Grand Central Station Terminal facility location where the Plaintiff was then subjected to a frisk search by a female police officer and the Plaintiff's pockets emptied of that which was then in her pockets.

63. The Plaintiff was directed to remove her jewelry and her belt and her shoes.

64. The Plaintiff was asked several questions and photographed with a handheld camera while she held a piece of paper with her name situated thereon.

65. The Plaintiff was placed in a holding cell which was uncomfortably hot

66. The Plaintiff and Albert and an individual, Angie Kostakis, who had also been arrested at some point [unbeknownst to the Plaintiff], were held at the Grand Central Station Terminal facility for several hours, always in the uncomfortably hot cells [Albert separate and apart from the Plaintiff and Angie Kostakis], until they were transported to Manhattan Central Booking at or about 1:30 A.M. on August 18, 2012.

67. The Plaintiff was detained at the Manhattan Central Booking facility until she was released, without preferral of charges, from the Manhattan Central Booking facility at or about 2:30 P.M. on August 18, 2012.

68. The Plaintiff was processed at the Manhattan Central Booking facility where the conditions of her custodial detention were unreasonable and caused the Plaintiff distress.

69. The Plaintiff was unable to sleep, she worried about care for her cat, and she was in physical pain associated with her handcuffing and otherwise.

70. At the time that the Plaintiff was released from custody she was informed she could leave.

71. It is believed that the New York County District Attorney's Office declined to prosecute the Plaintiff and did not bring any formal charge against the Plaintiff.

72. The Plaintiff did not appear at an arraignment.

73. The Plaintiff was not directed, when released, to appear on any date at any court; and the Plaintiff did not receive a Summons or a Desk Appearance Ticket.

74. The Plaintiff was simply freed from her detention and custody and allowed to leave.

75. There was no basis for the stop and detention and eventual custodial arrest of the Plaintiff by the Metropolitan Transit Authority Police Officers, each of whom is an agent and employee of the Metropolitan Transit Authority.

76. There was no basis, in fact or law, to frisk search the Plaintiff, to fingerprint the Plaintiff, or to photograph the Plaintiff.

77. There was no basis, in fact or law, to take the Plaintiff into custody and to detain and imprison her at what is believed to be a Metropolitan Transit Authority police facility on a lower level at the Grand Central Station terminal facility.

78. There was no basis, in fact or law, to arrest the Plaintiff.

79. There was no basis, in fact or law, for the use of any force employed by the police officers as described herein by the Plaintiff including the handcuffing of the Plaintiff.

80. The use of force was in all respects unreasonable, unnecessary, and excessive.

81. While the actions and conduct of the Metropolitan Transit Authority police officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as Metropolitan Transit Authority Police Officers and as agents and employees of the Metropolitan Transit Authority which Authority is a public entity created under the laws and Constitution of the State of New York to operate and maintain public transportation in the City of New York and throughout the New York metropolitan region.  It is believed that "Joe" Alvarez was the Plaintiff's arresting officer and/or involved in the Plaintiff's stop, detention, and arrest.

82. There was no probable cause for the arrest of the Plaintiff.

83. The Plaintiff was falsely arrested.

84. The Plaintiff was subjected to assault and battery and excessive force in the form of handcuffing.

85. The Plaintiff was otherwise subjected to an unlawful invasion of her privacy and to an unlawful seizure including the unlawful seizure of the sign and balloons which the Plaintiff and Albert were carrying [as described].

86. It is believed, moreover, that the Plaintiff was arrested because of her exercise of her First Amendment guaranteed rights of association with the Occupy Wall Street movement and further because of her First Amendment guaranteed right of reasonable petition and protest.

87. It is believed that the actions and conduct herein described were propelled by crime offense enforcement initiatives of the Metropolitan Transit Authority which initiatives are grounded in the philosophy of the "ends justifies the means".

88. It is believed that such crime offense enforcement initiatives propel officers to seek out arrests where there is no probable cause for such and no basis for the stop and detention of individuals and, by such, to generate arrest statistics and/or to otherwise make examples of individuals in the hope that such would act as a deterrence to others who are engaging in non criminal First Amendment speech protected activity.

89. Moreover, it is believed that Metropolitan Transit Authority Police Officers are under pressure to meet quotas respecting stops, detentions and arrests as part of the afore-described crime offense enforcement initiatives.

90. The actions, conduct, policies and practices and customs herein described violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

91. The actions, conduct, policies and practices, and custom violated the Plaintiff's rights under the laws and Constitution of the State of New York including an unlawful stop and detention, false arrest, excessive, unnecessary,

and unreasonable detention, and unreasonable and unnecessary and excessive terms and conditions of her stop, detention, and custodial arrest, excessive and unnecessary, and unreasonable force, and the violation of the Plaintiff's rights, as guaranteed under the State Constitution, to association and the free exercise of speech.

92.   The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

93.   The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and including physical pain and suffering.

94.   The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

95.   The Plaintiff has no other ad equate remedy at law but for the institution of this litigation.

V.   CAUSES OF ACTION

A.   FIRST CAUSE OF ACTION

96.   The Plaintiff reiterates Paragraph #'s 1 through 95 and incorporates such by reference herein.

97.   The Plaintiff was unlawfully stopped and detained and excessively held in custody and falsely arrested and searched in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

98.   The Plaintiff suffered injuries and damages.

B.   SECOND CAUSE OF ACTION

99.   The Plaintiff reiterates Paragraph #'s 1 through 98 and incorporates such by reference herein.

100.   The Plaintiff was unlawfully stopped and detained and excessively detained and falsely arrested and searched

in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

   101.   The Plaintiff suffered injuries and damages.

### C. THIRD CAUSE OF ACTION

   102.   The Plaintiff reiterates Paragraph #'s 1 through 101 and incorporates such by reference herein.

   103.   The Plaintiff was excessively detained and falsely arrested in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

   104.   The Plaintiff suffered injuries and damages.

### D. FOURTH CAUSE OF ACTION

   105.   The Plaintiff reiterates Paragraph #'s 1 through 104 and incorporates such by reference herein.

   106.   The Plaintiff was excessively detained and falsely arrested in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

   107.   The Plaintiff suffered injuries and damages.

### E. FIFTH CAUSE OF ACTION

   108.   The Plaintiff reiterates Paragraph #'s 1 through 107 and incorporates such by reference herein.

   109.   The Plaintiff was subjected to unreasonable, unnecessary, and excessive force in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

   110.   The Plaintiff suffered injuries and damages.

### F. SIXTH CAUSE OF ACTION

   111.   The Plaintiff reiterates Paragraph #'s 1 through 110 and incorporates such by reference herein.

112.   The Plaintiff was assaulted and battered and subjected to unnecessary, unreasonable and excessive force in violation of rights guaranteed to the Plaintiff under the laws and Constitution of the State of New York.

113.   The Plaintiff suffered injuries and damages.

### G.   SEVENTH CAUSE OF ACTION

114.   The Plaintiff reiterates Paragraph #'s 1 through 113 and incorporates such by reference herein.

115.   The Plaintiff was subjected to a search in violation of rights guaranteed to the Plaintiff under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

116.   The Plaintiff suffered injuries and damages.

### H.   EIGHTH CAUSE OF ACTION

117.   The Plaintiff reiterates Paragraph #'s 1 through 116 and incorporates such by reference herein.

118.   The Plaintiff was subjected to a search in violation of rights guaranteed to the Plaintiff under the laws and Constitution of the State of New York.

119.   The Plaintiff suffered injuries and damages.

### I.   NINTH CAUSE OF ACTION

120.   The Plaintiff reiterates Paragraph #'s 1 through 119 and incorporates such by reference herein.

121.   The Plaintiff was subjected to the actions and conduct herein challenged because of her association with the Occupy Wall Street activities in violation of her rights of free speech and association as guaranteed under the First Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

122.   The Plaintiff suffered injuries and damages.

### J.   TENTH CAUSE OF ACTION

123.   The Plaintiff reiterates Paragraph #'s 1 through 122 and incorporates such by reference herein.

124.   The Plaintiff was subjected to the actions and conduct herein challenged because of her association with the Occupy Wall Street activities in violation of her rights of free speech and association as guaranteed under the laws and Constitution of the State of New York.

125.   The Plaintiff suffered injuries and damages.

### K.   ELEVENTH CAUSE OF ACTION

126.   The Plaintiff reiterates Paragraph #'s 1 through 125 and incorporates such by reference herein.

127.   The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

128.   The Plaintiff suffered injuries and damages.

### L.   TWELFTH CAUSE OF ACTION

129.   The Plaintiff reiterates Paragraph #'s 1 through 128 and incorporates such by reference herein.

130.   The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

131.   The Plaintiff suffered injuries and damages.

### M.   THIRTEENTH CAUSE OF ACTION

132.   The Plaintiff reiterates Paragraph #'s 1 through 131 and incorporates such by reference herein.

133.   Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant Metropolitan

Transit Authority, the Defendant Metropolitan Transit Authority is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the Metropolitan Transit Authority, pursuant to the doctrine of respondeat superior.

134. The Plaintiff suffered injuries and damages.

### N. FOURTEENTH CAUSE OF ACTION

135. The Plaintiff reiterates Paragraph #'s 1 through 134 and incorporates such by reference herein.

136. When the Metropolitan Transit Authority represents its Officers in federal civil rights litigations alleging unconstitutional actions by its officers, it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

137. It is believed that the Officer-employee executes a retainer/indemnification/representation agreement which requires the Officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier –the Defendant Metropolitan Transit Authority.

138. The Metropolitan Transit Authority is, under the circumstances, the real party in interest.

139. The named and unnamed individual Defendants are employees and agents of the Metropolitan Transit Authority and their conduct, as described, was taken in the course of their duties and functions as Metropolitan Transit Authority Police Officers and, in their capacities as such, as agents and employees of the City of New York.

140. Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken pursuant to and associated with the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

141. The Plaintiff is entitled to recover against the Metropolitan Transit Authority for the conduct of its named and unnamed Officers under the federal claim jurisdiction pursuant to the doctrine of respondeat superior.

142.    The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

        [a] Invoke pendent party and pendent claim jurisdiction.

        [b] Award appropriate compensatory and punitive damages.

        [c] Award appropriate declaratory and injunctive relief.

        [d] Empanel a jury.

        [e] Award attorney's fees and costs.

        [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       October 1, 2012

Respectfully submitted,

/s/James I. Meyerson____
JAMES I. MEYERSON
64 Fulton Street @ Suite # 502
New York, New York 10038
[212] 226-3310
[212] 513-1006/FAX
jimeyerson@yahoo.com
ATTORNEY FOR PLAINTIFF
BY:_____